152149 Great American Insurance Company v. EL Bailey Company Inc. et al. Oral argument not to exceed 15 minutes per side. Mr. Noonan for the defendant's appellate. May it please the court. Thomas Noonan appearing on behalf of the defendant's and appellant's in this matter, Edward Bailey and EL Bailey and Company. I would like to note that Edward Bailey, the president of the company, is here today, as well as his son, Reggie, who is the vice president. We thank the court for its time this morning. I know that the court has carefully reviewed the papers that we've submitted, and I would like to note that I have, with the court's permission, reserved five minutes for rebuttal. And I just want to emphasize a few points that we think are very important for the court to keep in mind in deciding this appeal. There's not any dispute in this matter that Michigan law governs this dispute, and there's also not any dispute that the court follows the decisions of the state's highest court when the court has addressed the relevant issue, and we cited case law to that effect in our brief. And we believe that proper application of Michigan law in this case mandates a reversal. And the key and primary issue, as the court undoubtedly is well aware, is whether or not there's an issue of fact with respect to Great American, my client's surety on the subject project, whether there's an issue of fact that they settled my client's $1.5 million claims for $358,000 without any notice to my client. From what source do you derive the obligation to give notice? Because here your client had contractually authorized Great American to conclude the settlement. Your Honor, I think it's implied in Michigan law, this good faith standard. It's also noted. Is it explicitly? I mean, is there case law that says it's implicit? With respect to notice, Your Honor? Yes. We cited, among other cases, the commercial union versus Liberty Mutual Insurance case. It's a 1986 Michigan Supreme Court case. And that stands for the proposition that essentially bad faith in the insurance context is less than a fraud standard. And we went on to talk about it. Well, that would seem to equate a failure to give notice with bad faith. But where do you get the implicit duty to notify? The commercial union case lists a number of factors, Your Honor, 12 separate factors that should be looked at in terms of this good faith standard. One of them is keeping the insured informed of settlement offers and informed of the progress of any settlement offers. We cited cases from other jurisdictions. There's not a lot of case law directly on point as far as assurity and obligations to notice. Are those cases intending to speak to the situation where, under the contract, there's the party who's in the position of Great America is authorized to settle? I think that they do, Your Honor. We cited two cases from Minnesota, a 1972 case and a 2008 case. And if I may, Your Honor, I can cite those cases for the record. It's the New Amsterdam versus Lundquist case, which we cited on page 21 of our primary brief. And the citation to that, Your Honor, is 198 Northwest 2nd, 543, a Minnesota case from 1972. And I'm quoting from the court in that case, quote, In determining the good faith of the insurer, an important question is whether the insurer informed the insured of all proceedings. And the court went on to, including communication of settlement offers. And that was at page 551. Is that an assurity case? It is an assurity case, Your Honor. And the court went on to state this rule is extended to surety agreements. The indemnity is required to communicate to the indemnitor all offers of settlement which affect the indemnitor's obligation to the indemnity. We also cited, further on page 22, this is another Minnesota case. In Liberty Mutual Insurance Company versus Northeast Concrete Products, that's 756 Northwest 2nd, 93. It's a 2008 Minnesota case. And in that case, the surety went to extensive lengths to keep the indemnitor advised of the status of negotiations and an ultimate settlement. And in that case, the court said that the surety had complied with its obligation of good faith. And we think that case is helpful to us because it's so distinguishable from what happened here. I don't question that it would have been, it would have been, well, it extends beyond nice. But, you know, I mean, it would have been better under the circumstances probably. But I'm just not sure that the failure to give notice when the right to settle has been contractually given to Great American, I'm not sure that that gets you very far in establishing bad faith. Well, I think that, Your Honor, when you combine it with what we contend is, again, we think that under Michigan law the standard in this context is less than fraud. And we think that there was a duty on behalf of Great American to conduct a reasonable investigation into the claims that my client had asserted against the State of Michigan. And, again, with Michigan law controlling, we submitted before the district court the affidavit of our construction claims expert. And he had prepared a very detailed analysis of multiple binders, approximately several hundred pages, Your Honor. And he opined that Bailey's claims were worth at least a million dollars. And he hadn't studied the pass-through claims before the extra half million dollars, in other words, pass-through claims from Bailey's subcontractors for claimed extra cost and extra work. And he opined that virtually all of the delays and virtually all of the delays on the critical path of the schedule were the State's responsibility. That evidence alone, we think, supports a conclusion that Great American did not conduct a reasonable investigation or at a minimum. I don't get with the suggestion of the arbitrator that your client was owed $220,000 to resolve all of the cross-claims. I think you're referring to the Spitler report, Your Honor. And just by way of background, that was a non-binding process that was set forth in the contract between Bailey and the State, and Mr. Spitler was the State's representative. The State picked him. In any event, our point on that is, again, under Michigan law, if there's mutual responsibility for the delays, if the contractor is not solely responsible for the delays, then the liquidated damages provision is null and void. Our position on Spitler is if you take his analysis as the gold standard, as the Bible, if you will, as we believe Great American did, if you take that analysis and apply Michigan law, his numbers are about $300,000 off. Because under his analysis, he says there's mutual responsibility for the delays. So if the liquidated damages provision is null and void, my client should be entitled to, right off the bat, the $425,000. And we point this out. I don't want to interrupt your argument, so finish that. But I would like you then to address how you end up calculating the $425,000. Sure. And just to briefly finish, we cited the case law, Your Honor. Under Michigan law, it is very clear that unless the contractor is solely responsible for the delays, the liquidated damages provision is null and void. The contractor gets the money. There's no division. Right, exactly. Exactly, exactly. Although there's case law that would suggest that the trend is to divide, rather than have someone who delayed three days and someone who delayed a year, and there be no division of the liquidated damages. And I think that is true, that it does seem to be that the trend, as reflected in the case law of other states, supports that position, Your Honor. But in Michigan, the law is that essentially the contractor gets everything. There is a case, and Great American cited it, the in-rate construction. They cited it on page 37 of their brief, in-rate construction diversified. That's a federal case that applied Michigan law, and they did apportion it. But we believe that's at best persuasive authority, and the binding authority is still the Michigan Supreme Court case law. It may be older, but we think the law is clear. We respectfully submit that that's the binding precedent in Michigan, as we sit here today. Could you briefly explain how you calculate the $425,000 just in general? Because I thought the mediator had found substantial completion in 368 days. I'm not sure where the $425,000 figure comes from. The $425,000 figure comes from the amount that was withheld as essentially the contract balance, Your Honor. And at the time that the mediation was done, the project was not completed. So in terms of a contract balance analysis, $425,000 is the number that's at issue. Are we talking about wrongfully withheld liquidated damage? Correct. Correct, Your Honor. That's correct. I mean, in order to get to the figure that you claim would be the amount your clients owed, you've got to multiply $1,000 a day by the number of days. And I would judge strange. I haven't figured out where that $425,000 comes from, given the way one has got to calculate the liquidated damages under your theory. And I thought there was some evidence the state withheld it was for 225 days, which would be $225,000, not $425,000. The amount withheld, Your Honor, and it's set forth, again, in our expert's affidavit, is $425,000. But that, I don't think anybody has, I'm not finding anybody who has the position that that's the correct amount of liquidated damages. It's just that's the amount your client wasn't paid. It's not tied to a liquidated damages calculation, I don't think. It doesn't seem to be. In light of the substantial completion day figure. I'm sorry, Your Honor? In light of the substantial completion having been found to have occurred 368 days late. If you assume that it's 368 days, Your Honor, the analysis changes slightly in that we should still be awarded $368,000 because the delays were not solely my client's responsibility. So that would still adjust the number of Spitler's analysis if you apply Michigan law properly to Bailey would be entitled to, even if you accept that as true. We don't, but even if you accept that as true, that still gets Bailey's number to about $530,000, which is close to $200,000 more than the settlement amount. They did not properly investigate Michigan laws to this claim at a minimum. They have, under their contractual right, have settled for any figure except the figure that you claim is owed. Did the contract not give them some discretion in resolving the claim? I think to answer your question, yes, Your Honor, within the good faith limitations that they had to conduct a reasonable investigation into our claims. What was that number? What was the threshold? I don't know, but we think it's clear it was significantly higher than $358,000. And their position was the sole evidence, or virtually the sole evidence that they contend supports their position that they did conduct a reasonable investigation is Spitler. They said, well, Spitler's 220 and we're 358, therefore we're reasonable. No, Spitler's not 220 if you apply Michigan law. Spitler's at least $500,000. Even if you're going to take 368 days as the number, we should still get the additional amount that was withheld under that number. But your client never completed the project at all, right? Yes, we did. This is a substantial completion. You've also got liquidated damages for a final completion delay. The mediator never got to that. We did, Your Honor. And the record's not clear on that, but we did, Your Honor. But the record said that another contractor was employed to complete the project. Great American did become involved in completing some punch list items, Your Honor. That is correct. But was another contractor employed to complete the project? I believe so, Your Honor. But that question may be better directed to Mr. Mullen as well. Thank you. I think your time is up. Your time is up. You'll have your rebuttal. Thank you. I appreciate it. If it may please the Court, I'm Lawrence Mullen on behalf of the Great American Insurance Company, and I have with me representatives of Great American Insurance Company in the courtroom. I would like to focus my remarks on what I believe is the central issue in this case, is the failure of Bailey to post collateral that was required under the indemnity agreement and was requested on numerous occasions by Great American. The district court in its ruling, and this is on page 19 of its transcript, made the following findings. It said, if Bailey had been all paid up with the subcontractors, then Great American here would have had no standing at all. But once Great American is paying on Bailey's behalf, Great American gets to protect their interest by being substituted as the plaintiff in this project. So therefore, according to the district court, whose money was being used to satisfy the subcontractor's claim? That is a fair understanding, and I see how that fits within the argument of this case. The difficulty in what your opposing counsel says is that the reason it was unable to post that collateral was because the state erred basically in its architectural, its design plans. And it was those errors that created the entire problem. So they say from that, you should have understanding, standing in your own shoes, having to pay out the money yourself with a somewhat conjoined interest because both of you want the most money that you can get. But yet you still have the difficulty or the duty or responsibility to understand what the rights of the person for whom you are substituting. And their claim is that our rights were significantly larger than the importance that you allocated to them because the state owed us money because it was their errors that created all the cost. Yes. Last week, we submitted to this court a supplemental authority, and it's a ruling issued by the Eastern District of Michigan in June of this year. It's the case of Liberty Mutual v. DeVere Construction, where that particular issue was raised. The surety was asking for an order requiring the pledging of collateral. The contractor said it had great claims under the contract, and the district court said that does not relieve the contractor from paying the subcontractor claims. They should use the contractor's money, not the surety's money. And then the contractor has the right to try to recoup its funds on its claims against the owner. And that court cited the decision of Safeco versus Oakland Excavating, which was cited in our brief, and is consistent with Judge Tarnow's ruling in this case. So the law is very clear that there's an obligation under the indemnity agreement for the contractors to post collateral just because they think that they have strong claims against other parties does not relieve them of that obligation. They post the collaterals or satisfy the subcontractor's claims and then try to recover it from other parties. But if they don't, then the... The question that's raised here is not the collateral issue. I think that there's clear agreement that that is their responsibility under the contract. The question is when they did not and your client took over that claim, did your client act in good faith? If I can address that. The agreement that was negotiated with the state and was disclosed in September of 2013 was just a contingent claim. It required Great American to go into court and obtain a ruling and an approval order finding that Great American had the right to release Bailey's claim. If Great American could not obtain that order, then that settlement agreement was null and void. And so we preserved the right of Bailey to go into court and object to our settlement. I would also like to add that in 2002, we made a demand for collateral of $1.4 million. In November of 2013, two months after this tentative settlement, Great American reduced the collateral amount to $653,000, which was almost exactly the amount of the subcontractor claims. Bailey had 18 months from when we reduced that demand for collateral to the hearing, which was in May of 2015, to come up with a collateral. And according to Judge Tarnow, if they had come up with that collateral, we would have found that Great American did not have standing to release the claim, the settlement agreement would have been null and void, and Bailey would have the right to fully pursue its claim against the state. I think that's a finding of good faith. We reduced the collateral demand. We gave them an opportunity to cure their default and to be heard before Judge Tarnow. But they did nothing to post any collateral or to cure any of the defaults under the indemnity agreement. Why did you fail to inform Bailey of your negotiations with the state until immediately before this mediation hearing? Well, those negotiations, if you look at the e-mails, it was on one week before. It was on September 5 where the state offered to settle for $313,000. We had been in discussions with the state, but mainly to achieve final completion of the project, which was an obligation under our performance bond. The settlement agreement is very lengthy as to how final completion was going to be achieved. We had to complete the project because the site work was not completed. There was defective work. There was issues of warranties. So to boil this down, is it we were too busy? I'm sorry? I said to boil this down, is the answer we were too busy during that week? No. We rejected that offer. I understand that's not the final settlement amount. It just seemed like we were getting into a lot of stuff that amounted to we didn't get around to it. And I'm asking you to cut to the bottom line. Okay. Bottom line, it was one day, September 11, that we finally reached an agreement on that. The state gave an ultimatum. They said if they have to go to this mediation, all deals are off. Do you concede that you had an obligation to notify Bailey of what was going on? No. We believe that we had no duty because that claim was assigned to us. And we had listened to what Bailey said about their claims, considered all the information that they gave to us, considered their case law about liquidated damages, which we did not believe was accurately reflect what the Michigan courts would do in view of more recent cases saying that once a contractor is solely responsible for delays, then there can be the assessment of liquidated damages. At least there was that exposure. And as Spittler saw, there was about 90 days of delay caused by the state, but 270 days of delay caused by Bailey, which was not being interfered with by the state. And we also had the issue, as the court has pointed out, about liquidated damages after final completion, which we're continuing to run. Plus we also had concerns about the cost of achieving final completion, completing the work, the construction defects, and so on. So all of this was trying to be worked out. And when we did notify them, we preserved their right to come into court and to object or to cure their default of not posting collateral. But in answer to your question, we believe that the case law does not require notification. The case law also says that if a contractor fails to post collateral, there can be no bad faith claims asserted against a surety because they own the claims. Here, the only prejudice that Bailey is- You also own the unpaid, what remains unpaid after you receive the monies, which means you owe a debt of the other side. So because you still have the ability to go against Bailey for the remaining monies, doesn't that entail a good faith obligation to inform them of your settlement? Well, we did advise them of our settlement. During the course of its completion. On September 11th, we advised them of the settlement and gave them an opportunity to object in the court or to post the collateral and cure their default so that they could take over the claim. And we also reduced our collateral demand to make it easier for them to satisfy our collateral demand. That's kind of the procedural history of what's going on. This is September 11th. You're telling them about the settlement. What should they have done under your theory and when should Bailey have done it? Okay. They should have come up with collateral to satisfy their obligations under the indemnity agreement and pay the $653,000 that was requested two months later. And if they had come up with that collateral, then, as Judge Carno stated, we would no longer have standing to release their claim. They would then own that claim. But because they did not come up with the collateral and Great American had to use its own funds to pay that money, under the indemnity agreement, that claim was assigned to Great American. And that Great American could use its best efforts because they were the real party in interest. Great American had the incentive to recover as much as it possibly could to obtain from the state. Because this was still just a fraction of the total loss. And so based upon all the circumstances, this was the best deal that we could come up with. And Great American, in the exercise of its business judgment, decided that this settlement offer should be accepted even though it would result in a deficiency there. I mean, Bailey claims that Great American didn't do sufficient investigation of the merits of Bailey's claims, right? Well, they allege that, but they put nothing in the record as to what was the nature and extent of Great American's investigation. And Judge Carno made that finding. There was no evidence of that investigation. And they didn't even raise that issue in response to our motion for summary judgment. So we had no opportunity to put evidence in the record of our investigation. But we... How did it first come up? At the oral argument before Judge Carno. And in response to Judge Carno's questions, I say we reviewed all the materials, a box full of materials submitted by Bailey. We settled, negotiated and settled 16 claims by subcontractors. We knew everything about that case. None of those subcontractors supported Bailey's claims. They never presented an affidavit from any of their subcontractors supporting their position. We also had negotiations with the state with respect to achieving final completion. So we had negotiated... We had investigated this issue, the entire project, for a period of about a year and a half before we settled with the state. Did you employ a different contractor to complete the project? Yes. That was Margolis. I forget. Contracting to complete the site work. And also, when we reached settlements with the subcontractors, if there was defective work or warranty issues, we first found I had to find out from the state what they would require for final completion. And the state did give us some concessions, you know, some reductions as to what as-built drawings, what warranties, what defective work needed to be completed. And then we could go back to the subcontractors, and before we settled with them, saying this is what the state requires. So it all had to be tied together. So kind of, I mean, although there's no evidence in the record on what was or was not done, your position in response to the argument that's made is that you could not have acted in Great American's own self-interest without adequately investigating in order to properly resolve those claims. Exactly. A surety has an obligation to do an independent investigation of all claims, whether it's under a payment bond by the subcontractors or a performance bond claim by the owner. And as a result of this, there was a lot of lawsuits filed, and as a result of this, Great American settled everything and achieved final completion for the state and did what was required of the surety under their bonds. And so your position is that there is a unity of interest between you and Bailey because, in the end, Bailey may not pay the difference, and you may have to pay it yourself. So you want to get the most you can get out of it on the very practical possibility that you may be paying that also. That is exactly correct. We were the real party in interest, as consistent with Judge Tarnow's finding that whoever ended up having to pay the subcontractors would be the real party in interest. So if Bailey paid the subcontractors, they could pursue the claims against the state, but since the surety had to make those payments, then the surety would pursue those claims against the state. And what was the timeframe that was available to provide the reduced collateral? Okay. We reduced the collateral on November 1st of 2013, and the hearing before Judge Tarnow was May 15th, 2015, 18 months. So did you end up having the Great American have to fund a deficit, or did you recoup it all from Bailey? What's the status of that? No. We have not recovered anything from Bailey as far as I know of. We had to fund all the expense to satisfy the subcontractor claims and to achieve final completion. The only money that we have recovered to date was the $358,000 that we recovered from the state. And we are out that amount, plus the attorney's fees, which are still accruing, but we reserved that right. But we did not ask that the district court enter judgment on the attorney's fees. Is there no more questions? What is your best case under Michigan law that suggests that the Michigan Supreme Court would now apportion liquidated damages as opposed to refusing? Based upon the one case that's construction diversification, which they applied that, plus that is the law in most jurisdictions now. Plus the concept of fairness is that if an owner delays a project for five days, that doesn't give the contractor to delay the project for 1,000 days without some consequence. Okay. Thank you very much. Mr. Noonan. Thank you. May it please the Court, Thomas Noonan again on behalf of the defendants and appellants, appellants E.O. Bailey and Company and Edward Bailey. Your Honor, you asked a little bit about the background of this. My client realized early on in this project that the State was mistreating it very, very badly. We filed a lawsuit originally against the State of Michigan in 2011 when the project was still ongoing in the Court of Claims. There were two parties, Bailey and the State of Michigan. The State of Michigan, with all due respect, I've lived there my whole life, they're masters of delay in these kinds of cases. They moved to stay the case because of this administrative mediation that was purportedly set forth in the Bailey State contract. That mediation didn't take place until about 10 months later. In the interim, my client hired a claims consultant who put together three binders of material supporting its claims in preparation for this mediation. And under the contract, the State was entitled to pick the mediator. So we didn't think we were going to get that far in the interim because my client was not paid by the State of Michigan. We were unable to pay our subcontractors. All of the subcontracts at issue for this project had a pay if paid or pay when paid provision, which under Michigan law is valid and enforced. My client pays its subcontractors. They didn't have the money to pay them. So during this 10-month period, subcontractors understandably haven't been paid. They start filing lawsuits. There's eight or nine lawsuits filed in a separate court because they couldn't join the Court of Claims court. Long story. None of those subcontractors submitted an affidavit saying that their delays should fall at the feet of the State. Is that correct? I did not find anything in this record that says this was the State's fault that I was not paid. Well, we did not submit any subcontractor affidavit, Your Honor, but we did submit an affidavit from our claims consultant, and we submitted internal documents from the State admitting, particularly with respect to some of these design flaws, that it's on them. So we believe that there is sufficient evidence in the record to show that the State has at a minimum, at a minimum joint responsibility for these delays. So ultimately, this mediation with Mr. Spitler, he makes his recommendation. It's unacceptable to us. There's all these subcontractor cases pending in a separate court. Our case ultimately ends up getting transferred to the Washtenaw County cases. There's nine cases sitting there with the Washtenaw County Circuit Court judge now acting as the Court of Claims court. Now we're into 2013. Subcontractors aren't paid. I'm sorry, but I don't think I asked any. Will you continue to say I asked something that would elicit this response? I don't think that's whatever it was. I was not asking for the procedural history. I'm sorry, Your Honor. The point is, is that with respect to the collateral issue, that in no way bars our claim at all, the fact that we were unable to provide the requested collateral. And it does not change great Americans' obligation to investigate our claims. And there is evidence in the record, Your Honor, their primary reliance, if not sole reliance for the adequacy of their investigation is the Spitler Report. And we briefed this, and the Spitler Report, if he is right, his number is wrong. His number is close to $200,000. You didn't submit, did you submit any evidence of a failure to investigate? We submitted, part of the issue, Your Honor, is that. And is your adversary correct when he says the issue wasn't even raised until the oral argument? It was raised in our response brief, Your Honor. And we hedged our bets because we did not believe, because the settlement agreement was not signed until after the court's hearing. So up until the date of the settlement agreement, our claims were still against the State of Michigan. We did not believe our claims against Great American were ripe. So we hedged our bets. But we did present evidence of the Hoffman Report, the Hoffman Affidavit, all of the evidence of the State's failures, the Spitler Report. And we argued this issue at the hearing. And it was incorporated into the court's ruling. And we fully briefed it on appeal. But the State's conduct doesn't go to great Americans, what Great American undertook to investigate the case. Well, we think it does in the sense of had they properly investigated that conduct, they never would have settled for the amount that they settled for. And at a minimum, there's an issue of fact. And we're spending a lot of time arguing facts. And we think that that supports a reversal, Your Honor. Are there further questions? You may have 30 seconds. Well, your red light just went off. I think we've covered everything, Your Honor. We appreciate the court's time very much. Thank you. We thank you both for the argument you've given, and we'll consider the case carefully. Thank you. Thank you.